## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ARDUINO, LLC,

*Plaintiff*,

-v-

Civil Action No.:

ARDUINO S.R.L. f/k/a SMART PROJECTS
S.R.L.; GHEO SA; CC LOGISTICS, LLC;
MAGYC NOW LTD; DOG HUNTER INC.; DOG
HUNTER LLC; DOG HUNTER AG; TULYP
HOLDING SA; GIANLUCA MARTINO;
FEDERICO MUSTO; and DOES 1-10,

*Defendants*.

## COMPLAINT

Plaintiff, Arduino, LLC ("Plaintiff" or "Arduino"), by and through its undersigned

counsel, as and for its Complaint against Defendants, Arduino S.r.l. f/k/a Smart Projects S.r.l.,

Gheo SA, CC Logistics, LLC, Magyc Now Ltd., Dog Hunter Inc., Dog Hunter LLC, Dog Hunter

AG, Tulyp Holding SA, Gianluca Martino, Federico Musto, and Does 1-10 (collectively,

"Defendants"), hereby alleges as follows:

## NATURE OF THE CASE

1.      This is an action for trademark infringement under the Lanham Act and

Massachusetts common law, unfair competition under the Lanham Act, unfair business practices

under Massachusetts law, copyright infringement under the Copyright Act, and breach of

contract and breach of fiduciary duty under United States law.

2.      Arduino S.r.l. f/k/a Smart Projects S.r.l. ("Smart Projects") manufactures

ARDUINO branded products under license from Plaintiff and has acknowledged such on its products for years:



3.      Smart Projects and its web of companies, identified as defendants in this Complaint, now seek to usurp the ARDUINO trademark and other marks owned by Plaintiff.

4.      Arduino seeks a declaratory judgment that it is the true and rightful owner of certain United States trademark registrations and applications and its copyrights.

## THE PARTIES

5.      Plaintiff Arduino is a limited liability company organized and existing under the laws of the Commonwealth of Massachusetts, with its principal place of business in Cambridge, Massachusetts.

6.      Upon information and belief, Defendant Smart Projects is an Italian corporation with a principal place of business in Scarmagno, Italy.

{08126/609122-000/01261605.2}

7.      Upon information and belief, Defendant Gheo SA ("Gheo") is a Swiss corporation with a principal place of business in Chiasso, Switzerland.

8.      Upon information and belief, Defendant CC Logistics, LLC ("CC Logistics") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Boston, Massachusetts.

9.      Upon information and belief, Defendant Magyc Now Ltd. ("Magyc") is a Swiss branch of a United Kingdom-based limited company with a principal place of business in Bellinzona, Switzerland.

10.     Upon information and belief, Defendant Dog Hunter Inc. is a corporation organized and existing under the laws of the State of North Carolina and also is registered as a Foreign Corporation in the Commonwealth of Massachusetts.  Upon information and belief, Dog Hunter Inc.'s principal place of business is in Andover, Massachusetts.

11.     Upon information and belief, Defendant Dog Hunter LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in Boston, Massachusetts.

12.     Upon information and belief, Defendant Dog Hunter AG is a Swiss corporation with a principal place of business in Zug, Switzerland.

13.     Upon information and belief, Defendant Tulyp Holding SA ("Tulyp") is a Swiss corporation with a principal place of business in Morbio Inferiore, Switzerland.

14.     Upon information and belief, Defendant Gianluca Martino is an Italian citizen residing in Switzerland; the direct or indirect owner of Gheo and Smart Projects; and is the record member of Tulyp.

15.     Upon information and belief, Defendant Federico Musto is an individual residing

3

at 8 Battery Street, Apartment 8, Boston, Massachusetts 02109; Chairman of the Board of Smart Projects; the record resident agent and manager of CC Logistics; the record member of Gheo; the record president of the board of directors for Dog Hunter AG; the record president, treasurer, secretary and director for Dog Hunter Inc.; and the record president of Tulyp.

16.     Upon information and belief, Smart Projects, Gheo, CC Logistics, Magyc, Dog Hunter Inc., Dog Hunter LLC, Dog Hunter AG, and Tulyp are related companies.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over the federal trademark claims alleged in this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 and 1338(a).

18.     This Court has subject matter jurisdiction over the declaratory judgment claims alleged in this action pursuant to 28 U.S.C. § 2201 et seq.

19.     This Court has subject matter jurisdiction over the non-federal claims alleged in this action, pursuant to 28 U.S.C. § 1367(a), because such claims are so related to the federal claims alleged in this action that they form part of the same case or controversy.

20.     In the alternative, this Court has subject matter jurisdiction over the non-federal claims alleged in this action against Smart Projects, Gheo, Magyc, Dog Hunter AG, and Tulyp, pursuant to 28 U.S.C. § 1332(a), because complete diversity of citizenship exists between Plaintiff and those parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

21.     This Court has personal jurisdiction over Defendant Smart Projects, pursuant to Mass. Gen. Laws. Ch. 223A, § 3, because upon information and belief, it has sold, distributed, provided services, and/or is currently selling, distributing and providing services throughout the United States, including in this district.  *See, e.g.*, *Smart Projects S.r.l. v. Arduino, LLC*,

{08126/609122-000/01261605.2}

Cancellation No. 92060077, Dkt. 1 at ¶¶ 2-6, Petition to Cancel (TTAB).  This Court further has personal jurisdiction over Defendant Smart Projects because, upon information and belief, it is owned by Defendant Gheo.  Defendant Gheo has sued Plaintiff in a state court action in Massachusetts.  *See Gheo SA v. David A. Mellis and Arduino, LLC*, No. 14-4014 (Mass. Sup. Ct.), Complaint filed December 22, 2014.

22.     This Court has personal jurisdiction over Defendant Gheo, pursuant to Mass. Gen. Laws. Ch. 223A, §§ 2-3, because Gheo alleges that it owns a 20% membership interest in Arduino, a Massachusetts limited liability company, and upon information and belief, acts as the alter-ego of Smart Projects.  This Court further has personal jurisdiction over Defendant Gheo because it transacts business within the Commonwealth of Massachusetts, including but not limited to through its website http://www.gheo-electronics.com/catalog/index.php, which is commercially active and offers products for sale, and has caused injury to plaintiff in this District.  This Court further has personal jurisdiction over Defendant Gheo because it has sued Plaintiff in a state court action in Massachusetts.  *See Gheo SA v. David A. Mellis and Arduino, LLC*, No. 14-4014 (Mass. Sup. Ct.), Complaint filed December 22, 2014.  Additionally, upon information and belief, Gheo effectively controls Smart Projects, which supplies other Defendants with products for sale within the Commonwealth.

23.     This Court has personal jurisdiction over Defendant CC Logistics, pursuant to Mass. Gen. Laws. Ch. 223A, §§ 2-3, because it maintains its principal place of business in the Commonwealth of Massachusetts, and transacts business within the Commonwealth of Massachusetts, including but not limited to through its website http://store.cclogistics.us/catalog/, which is commercially active and offers products for sale, and has caused injury to Plaintiff in this District.

5

24.     This Court has personal jurisdiction over Defendant Magyc, pursuant to Mass. Gen. Laws. Ch. 223A, § 3, because, upon information and belief, it transacts business within the Commonwealth of Massachusetts, including but not limited to contracting with Arduino, distributing products in the United States, including in this judicial district, through CC Logistics and its website http://www.magyc-now.com/catalog/index.php, which is commercially active and offers products for sale, and has caused injury to Plaintiff in this District.  Furthermore, upon information and belief, Magyc may own or control or is otherwise related to Smart Project and Gheo, and transacts business within the Commonwealth through these Defendants.

25.     This Court has personal jurisdiction over Defendant Dog Hunter Inc., pursuant to Mass. Gen. Laws. Ch. 223A, §§ 2-3, because it maintains its principal place of business in the Commonwealth of Massachusetts and transacts business within the Commonwealth of Massachusetts, including but not limited to through its website www.doghunter.org, which is commercially active and offers products for sale, and has caused injury to Plaintiff in this District.  The website offers dollar-denominated products for sale.

26.     This Court has personal jurisdiction over Defendant Dog Hunter, LLC, pursuant to Mass. Gen. Laws. Ch. 223A, §§ 2-3, because it maintains its principal place of business in the Commonwealth of Massachusetts and transacts business within the Commonwealth of Massachusetts, including but not limited to through its website www.doghunter.org, which is commercially active and offers products for sale, and has caused injury to Plaintiff in this District.  The website offers dollar-denominated products for sale.

27.     This Court has personal jurisdiction over Defendant Dog Hunter AG, pursuant to Mass. Gen. Laws. Ch. 223A, § 3, because it transacts business within the Commonwealth of Massachusetts, including but not limited to through its website www.doghunter.org, which is

commercially active and offers products for sale, and has caused injury to Plaintiff in this District. The website offers dollar-denominated products for sale.

28.     This Court has personal jurisdiction over Defendant Tulyp, pursuant to Mass. Gen. Laws. Ch. 223A, § 3, because it transacts business within the Commonwealth of Massachusetts, including but not limited to contracting with CC Logistics, and has caused injury to Plaintiff in this District. Furthermore, upon information and belief, Defendant Tulyp may own and/or control or otherwise is related to Gheo, Smart Projects and/or Magyc, and may transact business within the Commonwealth through them.

29.     This Court has personal jurisdiction over Defendant Gianluca Martino, pursuant to Mass. Gen. Laws. Ch. 223A, §§ 2-3, because he is the direct or indirect owner of Gheo and Smart Projects, he is the record member of Tulyp, he has controlled the actions complained of herein and he has caused injury to Plaintiff in this District.

30.     This Court has personal jurisdiction over Defendant Federico Musto, pursuant to Mass. Gen. Laws. Ch. 223A, §§ 2-3, because he transacts business within the Commonwealth of Massachusetts, he is domiciled in the Commonwealth of Massachusetts, and he has caused injury to Plaintiff in this District. Furthermore, he is the record resident agent of CC Logistics, a corporation domiciled in Massachusetts.

31.     Venue is proper in this district, pursuant 28 U.S.C. § 1391(b)(2), because the collective wrongful acts of Defendants, as discussed, *infra*, occurred, in substantial part, in this judicial district.

32.     In the alternative, venue is proper in this district, pursuant 28 U.S.C. § 1391(b)(3), because, as discussed, *supra*, Defendants are subject to personal jurisdiction in this judicial district.

{08126/609122-000/01261605.2}

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.  **The ARDUINO Trademark**

33.     Massimo Banzi was an associate professor at the Interaction Design Institute Ivrea ("IDII") which was a graduate design program in Ivrea, in Northern Italy.  Banzi would frequent a bar named Bar di Re Arduino, named after Arduino, the King of Italy from 1001 to 1014.

34.     Banzi is the creator of the Programma 2003 Development Platform, a precursor of the many ARDUINO-branded products.  *See* http://sourceforge.net/projects/programma2003/. Banzi was also the Master's Thesis advisor of Hernando Barragan whose work would result in the Wiring Development Platform which inspired  Arduino.

35.     Banzi met David Cuartielles, a professor at Malmö University, when he was engaged by IDII as a visiting researcher to work on extending the Wiring Development Project.

36.     In 2005, Banzi invited Tom Igoe, a leading authority in the field of Physical Computing and professor at New York University, to work on a research project at IDII.

37.     Banzi also met David Mellis, a student in the Master's program at IDII between 2004 and 2006, at IDII.

38.     Banzi, Cuartielles, Igoe and Mellis will collectively be referred to as the "Founders."

39.     The Founders, assisted by Nicholas Zambetti, another student at IDII, undertook and developed a project in which they designed a platform and environment for microcontroller boards ("Boards") to replace the Wiring Development Project.  Banzi gave the project its name, the ARDUINO Project.

40.     The goal of the ARDUINO Project was to create an easy-to-use electronics

prototyping platform that would be available for use by as many people as possible.  In accord with these goals, the Boards were released as open-source hardware.

41.     On March 23, 2005, Banzi placed an order with System Elettronica S.r.l. in Strambino, Italy, for approximately 300 Boards and requested that the ARDUINO mark be affixed to the Boards.

42.     The Boards bearing the ARDUINO mark were distributed mostly at no cost (for promotional purposes) to different people involved in design education and to electronics enthusiasts.

43.     In July 2005, Banzi sent a number of ARDUINO-marked Boards to Igoe to be used at New York University for experimentation and teaching.  These Boards were assembled and distributed at New York University in August 2005.  *See* https://www.flickr.com/photos/77726415@N00/archives/date-posted/2005/08/18/.

44.     In October of 2005 Cuartielles secured the domain ARDUINO.CC on behalf of the Founders.

**B.  The Smart Projects Manufacturing Contract**

45.     In approximately 2004, Banzi met Gianluca Martino, an engineer who owned manufacturing facilities in Ivrea.  At that time, Martino was a part owner and manager of Defendant Smart Projects S.r.l. in Ivrea.  Upon information and belief, the name of Smart Projects at that time was Smart Projects SNC.

46.     Banzi engaged Martino and Smart Projects as a contract manufacturer for several projects at IDII.

47.     In late 2005, Banzi requested that Smart Projects manufacture 200 pre-assembled Boards bearing the ARDUINO mark to be used in teaching at IDII and Malmö University.

{08126/609122-000/01261605.2}

These Boards were shipped and sold in Italy to IDII and in Sweden to Malmö University.  The remaining Boards were sold to individuals who expressed an early interest in the ARDUINO Boards.

48.     The ARDUINO Boards were successful and spawned a dedicated community of do-it-yourself ("DIY") enthusiasts that continues to grow to this day.

**C.  The Partnership**

49.     The Founders formed a partnership with Martino.  The Founders handled the creation, development, and design of the ARDUINO Boards, including software development, website development, and documentation of the process.  Martino's role in the partnership was to handle the manufacturing of the ARDUINO Boards.

50.     The Founders and Martino held a series of discussions, beginning in late 2005, as to how to best rationalize the production of ARDUINO Boards and related products.   The precise details of these understandings evolved as the market for ARDUINO Boards evolved, but the fundamental structure of the understanding was as follows:

- The Founders and Martino formed a partnership (the "Partnership");

- The five partners, Banzi, Cuartielles, Igoe, Mellis and Martino, (collectively, the "Partners") would own equal 20% shares of the Partnership;

- The Partnership would own the ARDUINO trademark;

- The software would be distributed on an open-source basis;

- Smart Projects would manufacture Boards;

- Smart Projects would pay a percentage of what it received for selling Boards, as royalties to the Partners.

51.     Examples of the emails articulating the parameters of the Partnership are attached as **Exhibit A.**

52.     Examples of emails discussing the percentage of Smart Projects' sales that are to be paid to the Partnership as royalties are attached as **Exhibits B and F.**

53.     The understanding among the Founders and Martino was documented on various occasions.  For example, on March 3, 2006, Martino wrote in an email that Smart Projects would "take from the 'Arduino Enterprise' (AE) the task to produce and sell Arduino boards" and that he would take his share of the earnings "as a member of the AE."  Thus, Martino recognized from the beginning that the Arduino trademark and property belonged to an entity separate and apart from his company Smart Projects.

54.     Through the exchange of written and oral communications Smart Projects entered into an enforceable license agreement with the Partnership (the "License").

55.     Throughout this period, Smart Projects sold Boards to resellers and to distributors, including distributors in the U.S.

56.     The License set a royalty rate, and provided that the Founders exercised quality control over the Boards.

57.     The License also covered secondary trademarks, discussed further herein at Section F.

58.     The Founders and Arduino exercised quality control over the Boards by designing the Boards, defining their specs, developing the software and documentation, and testing and quality-checking manufactured product.

59.     Smart Projects paid trademark royalties to the Founders, or to Arduino, either directly, or requested that its distributors pay the royalty to Arduino.

60.     For example, in 2008-09, Smart Projects sold Boards to a U.S. company named NKC Electronics.  Upon information and belief, NKC Electronics paid Smart Projects for the

Boards, but at Smart Projects' request, Arduino invoiced and collected a trademark royalty from NKC.

61.     At a later point, Smart Projects, Gheo, and Magyc incorporated the trademark royalty into the price it charged its customers, and paid Arduino the royalties directly.

62.     The Partners engaged in discussions via email over a period of years as to how to best legally structure the Partnership, and how to perfect their ownership of the ARDUINO trademark.

63.     During this time, Smart Projects continued to sell Boards.  Martino advised the Founders as to how the payment of royalties could best be structured from the point of view of tax planning.  *See* **Exhibit C.**  In accordance with Martino's advice, the Founders invoiced Smart Projects, and Smart Projects paid such invoices.  *See* **Exhibit D.**

**D.  The Creation of Arduino, LLC**

64.     During this time, Banzi provided consultancy and e-commerce services in the United Kingdom, Italy and the United States through, Tinker.it! Ltd. ("Tinker.it!"), which is based in London.

65.     In April of 2008, the Partners caused to be formed, and Mellis had the incorporation papers prepared for, Arduino, LLC, a Massachusetts limited liability company. As illustrated in **Exhibit E,** the operating agreement of Arduino identifies the members as Mellis, Igoe, Cuartielles and Tinker.it!.  Each member contributed a nominal sum and "all right, title and interest in and to the name 'Arduino'." The three individual members received 20% ownership of the LLC and Tinker.it! received 40%.

66.     Banzi and Martino were represented in the LLC by the 40% ownership of Tinker.it!  Banzi's and Martino's shares of any royalties were paid through Tinker.it!  *See*

12

**Exhibit F.**

67.     Initially, the Partners would split any profits from the ARDUINO-branded products by individually invoicing Smart Projects at the end of the year.  Following the creation of Arduino, LLC the invoicing took place on a more frequent basis.  Smart Projects continued to pay such invoices.  *See* **Exhibit G.**

68.     With the creation of Arduino, LLC and the licensing of the name to manufacturers other than Smart Projects, a more formal 10% royalty payment was instituted.  Arduino, LLC collected such royalties from Smart Projects and other companies related or unrelated to Smart Projects.

69.     During this time in 2008, Tinker.it! held Martino's 20% ownership of Arduino, LLC in trust for him.

70.     Throughout this period, ARDUINO Boards were rapidly becoming a worldwide hit.

71.     As the ARDUINO brand and community grew, Banzi was recognized as the man behind Arduino as a result of numerous personal appearances at "Maker" gatherings, and the dissemination of many well-received videos explaining the Arduino Platform and philosophy.

72.     Banzi has been profiled in the United States in Wired Magazine, CNET, NPR and the New York Times.  He also was the only non-United States innovator invited to the White House Maker Faire in 2014.

73.     Banzi authored a book titled "Getting Started with Arduino," which is available for sale in the United States.  This book is now in its third edition.

74.     Banzi has been interviewed numerous times regarding ARDUINO-branded products.  In particular, his TedTalk interview has been viewed over 1.25 million times.

13

75.     Throughout 2008, as demand for the ARDUINO brand grew, the Partners, including Martino, discussed how best to organize the rapidly expanding business, and how to secure trademark protection.

**E.  Defendants' Usurpation of the ARDUINO Trademark**

76.     On December 19, 2008, Smart Projects, at the direction of Martino, filed Italian trademark application number TO2008C003952 for ARDUINO in its own name ("the Italian Application"), four months prior to the U.S. filing discussed in the following paragraph.  Despite previously participating in conversations with the Founders regarding Arduino, LLC's ownership of the trademark, Martino did not inform the Founders of the Italian Application.  On April 16, 2010, an Italian Trademark Registration No. 0001272511 ("the Italian Registration") issued based on the Italian Application.

77.     On April 7, 2009, Arduino caused to be filed United States Trademark Application Number 77/708,806 for ARDUINO for electronic circuit boards.  Mellis informed the other Partners of the filing.  Martino received this notification, but still did not disclose the existence of the Italian Application.

78.     Smart Projects relied on its Italian Application as the basis for International Registration No. 1028190 which was extended to various jurisdictions including the EU. Upon information and belief Smart Projects may have filed trademark applications in other jurisdictions as well. Collectively, the Italian Application and Registration, the International Registration and any other applications filed by or registrations issued to Smart Projects or related companies, in which ARDUINO is the dominant element shall be referred to as the "Foreign Trademark Applications."

79.     In fact, Martino never disclosed the existence of the Italian Application to the

14

Founders.  It was not until July 3, 2010 that Martino first referenced the Italian Registration in a response to a cost estimate provided by Arduino's American attorney for filing a Community Trademark application that would cover the countries of the European Union.  Mellis asked Martino to explain this filing, and Martino merely confirmed registration of the mark, but even then did not reveal that the filing was in the name of Smart Projects.

80.     It was not until July 22, 2010, after Arduino's American attorney advised Mellis that the Italian Registration was in the name of Smart Projects, that Mellis asked Martino to confirm this fact.  Martino finally acknowledged that Smart Projects had filed the Italian trademark application in its own name.

81.     Martino represented that Smart Projects had filed and that it held the registration in trust on behalf of Arduino, LLC.

82.     The Founders relied on Smart Projects' representations that the Italian Registration was being held in Smart Projects' name in trust for Arduino.  The Founders' understanding was that Arduino owned the ARDUINO trademark worldwide and that Smart Projects was its licensee, since it was paying royalties to Arduino.

83.     Because of these representations, the Founders continued to have conversations with Smart Projects toward the end of rationalizing the structure of the ownership, manufacturing and distribution of ARDUINO-branded products, and assumed that the ultimate reorganization would resolve the title ownership issue as well.

84.     Simultaneously with the discussion of how best to structure the enterprise, Banzi and the Founders responded to the continuing explosion of demand for ARDUINO-branded products by developing new products, including products branded as ARDUINO UNO, ARDUINO MEGA, and ARDUINO YÚN.

{08126/609122-000/01261605.2}

85.     Since filing the Italian Application in December 2008, Smart Projects, by making payments to Arduino, has continued to act pursuant to the understanding that it was the licensee of Arduino.  Smart Projects knew that prior to its December 2008 Italian filing that Arduino planned to obtain United States and international trademark registrations for the mark ARDUINO, and has never protested or contradicted Arduino's claims of ownership in the mark until approximately the fall of 2013.

86.     In sum, Plaintiff and Smart Projects have entered into an enforceable license agreement established through a series of oral and written communications.  The License has been modified from time to time, but the material terms have remained the same, namely, the Partnership owned the rights in the trademark ARDUINO and manufacturers, including Smart Projects, would pay a royalty to the Partnership (or Arduino, LLC) for use of the trademark. These terms are set forth more fully in the following paragraph.

87.     The material terms of the License are as follows: Plaintiff owns the ARDUINO trademarks and all trademarks related to the sale of ARDUINO Boards, including ARDUINO, the Infinity Logo, ARDUINO YÚN, YÚN, and all other Arduino Marks as defined below. Smart Projects receives from Plaintiff a license to use these marks, and also receives design specs for new products, supervision services of hardware design, software and firmware development services, documentation, tutorials, and code testing services.  In exchange, Smart Projects, and other companies controlled directly or indirectly by Martino, remit to Plaintiff 10% of the wholesale price of such Boards as a royalty payment.

88.     Throughout the period, Smart Projects has, upon information and belief, distributed ARDUINO-branded products to Defendants CC Logistics, Magyc, Gheo, and John Does (the "Distributors").

16

89.     Upon information and belief, Smart Projects, the other corporate Defendants and John Doe companies, have not provided a full accounting of royalties due to Arduino, as required under the License.   As of the date of this Complaint, Smart Projects and other companies controlled directly or indirectly by Martino, have stopped paying royalties.

## F.  Arduino's Other Trademarks

90.     Over the years, Plaintiff developed a family of Arduino-branded products, which are sold in the United States and abroad.

91.     These products include Arduino's Yún, Uno, NG, Diecimila, Mini, Mega, Duemilanove, DUE + Tre, Leonardo, Esplora, Micro, and Shield products.

92.     Because of Banzi's Italian heritage, he selected Italian-sounding names for many of the Arduino products.

93.     Cuartielles developed the ARDUINO SHIELD name in 2005.

94.     Plaintiff has adopted and used the following trademarks in United States commerce in connection with, at a minimum, Boards: ARDUINO, ARDUINO YÚN, YÚN, ARDUINO UNO, UNO, ARDUINO NG, NG, ARDUINO DIECIMILA, DIECIMILA, ARDUINO MINI, MINI, ARDUINO MEGA, MEGA, ARDUINO DUEMILANOVE, DUEMILANOVE, ARDUINO DUE + TRE, DUE + TRE, ARDUINO LEONARDO, LEONARDO, ARDUINO ESPLORA, ESPLORA, ARDUINO MICRO, MICRO, ARDUINO SHIELD, and SHIELD.  These marks will collectively be referred to as the Arduino Marks.

95.     The Arduino Marks were included in the License and Smart Projects affixed these marks to Boards, which were sold in U.S. commerce.

## G.  Arduino Copyrights

96.     In June 2010, Arduino contracted with ToDo, an Italian design firm, to create a

series of graphic designs and web designs, to function as a corporate and brand identity for Arduino (the "Infinity Designs").

97.     ToDo created and published the Infinity Designs in Italy on behalf of Arduino.

98.     The Infinity Designs are works eligible for protection under the Berne Convention.

99.     Copyrights in the Infinity Designs were assigned to Arduino pursuant to a written agreement.

100.    Defendants were implicitly licensed to reproduce the Infinity Designs through the License to Smart Projects, or through sub-licenses from Smart Projects.

101.    To the extent that Smart Projects and other Defendants renounce the License, their reproductions of the Infinity designs are unauthorized and infringing.

## CAUSES OF ACTION

### COUNT I
### Declaration of Trademark Ownership
### (Against All Defendants)

102.    Plaintiff repeats and re-alleges paragraphs 1-101, as if fully alleged herein.

103.    Plaintiff is the owner of the Arduino Marks. *See* Exhibits H & I.

104.    Any use of the Arduino Marks by Defendants inured and inures to the benefit of Plaintiff.

105.    Defendant Smart Projects has alleged in a Cancellation Proceeding before the Trademark Trial and Appeal Board that it has senior common law rights in the following marks registered by Plaintiff: the ARDUINO mark (Reg. No. 3,931,675) and the infinity design mark (Reg. No. 4,113,794) (the "Registered Marks").   *Smart Projects S.r.l. v. Arduino, LLC,*

Cancellation No. 92060077, Dkt. 1 (TTAB).

106.    Defendant Smart Projects has alleged in a Cancellation Proceeding before the TTAB that Arduino is not the lawful owner of the ARDUINO mark (Reg. No. 3,931,675) and the infinity design mark (Reg. No. 4,113,794).    *Smart Projects S.r.l. v. Arduino, LLC*, Cancellation No. 92060077, Dkt. 1 (TTAB).

107.    An actual, present and justiciable controversy has arisen between Plaintiff and Defendants concerning the ownership of the Arduino Marks, including the Registered Marks.

108.    Plaintiff seeks a declaratory judgment that it is the lawful owner of the Arduino Marks, including the Registered Marks.

**COUNT II**
**Trademark Infringement Under 15 U.S.C. § 1114,**
**Section 32 of the Lanham Act**
**(Against All Defendants)**

109.    Plaintiff repeats and re-alleges paragraphs 1-101, as if fully alleged herein.

110.    Plaintiff owns duly issued and validity subsisting rights in U.S. Trademark Registration Nos. 3,931,675 and 4,113,794.  *See* Exhibits H & I.

111.    The acts of Defendants alleged herein constitute use in commerce, without the consent of Plaintiff, of a reproduction, counterfeit, copy, or colorable imitation of one or more of Plaintiff's Registered Marks in connection with the sale, offering for sale, distribution, or advertising of goods or services, which use is likely to cause confusion or mistake, or to deceive consumers as to the source of the goods, and therefore Defendants have infringed and are infringing Plaintiff's rights in its Registered Marks, in violation of 15 U.S.C. § 1114(1)(a).

112.    The acts of Defendants alleged herein, without the consent of Plaintiff, reproduce, counterfeit, copy, or colorably imitate one or more of Plaintiff's Registered Marks in connection with applying such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints,

packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services, which use is likely to cause confusion or mistake, or to deceive consumers as to the source of the goods, and therefore Defendants have infringed and are infringing Plaintiff's rights in its Registered Marks, in violation of 15 U.S.C. § 1114(1)(b).

113.     The acts of Defendants described herein have been willful, in bad faith and with the intent to, or knowledge that its acts will cause confusion or mistake, or to deceive, making this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

114.     As alleged herein, Defendants are using marks identical to those owned by Plaintiff.

115.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered substantial damages.  Plaintiff is entitled to recover Defendants' profits, all damages sustained by Plaintiff, treble those profits or damages, and the cost of this action, plus interest, under 15 U.S.C. §§ 1114, 1117, which amounts are yet to be determined.

116.     Defendants' acts greatly and irreparably damage and will continue to so damage Plaintiff unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law and thus are entitled to injunctive relief.

## COUNT III
### Trademark Infringement and Unfair Competition Under 15 U.S.C. § 1125(a), Section 43(a) of the Lanham Act
### (Against All Defendants)

117.     Plaintiff repeats and re-alleges paragraphs 1-101, as if fully alleged herein.

118.     Plaintiff owns rights in the Arduino Marks.

119.     The acts of Defendant alleged herein constitute use in commerce, without consent of Plaintiff, of a word, term, name, symbol, or device, or any combination thereof, or false

designation of origin, false or misleading description of fact, or false or misleading representation of fact, in connection with the sale, or offering for sale, of goods or services in violation of 15 U.S.C. § 1125(a).

120.     These acts of Defendants are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products and/or services by Plaintiff.

121.     The acts of Defendants described herein have been willful, in bad faith and with the intent to, or knowledge that its acts will cause confusion or mistake, or to deceive.

122.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered substantial damages.  Plaintiff is entitled to recover Defendants' profits, all damages sustained by Plaintiff, treble those profits or damages, and the cost of this action, plus interest, under 15 U.S.C. § 1117, which amounts are yet to be determined.

123.     Defendants' acts greatly and irreparably damage and will continue to so damage Plaintiff unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law and thus are entitled to injunctive relief.

## COUNT IV
### Unfair Business Practices Under Mass. Gen. Laws., ch. 93A
### (Against All Defendants)

124.     Plaintiff repeats and re-alleges paragraphs 1-101, as if fully alleged herein.

125.     Defendants are engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws., ch. 93A.

126.     Defendants have engaged, and continue to engage, in acts of unfair and/or deceptive competition in violation of Massachusetts law, which occur primarily and substantially within the Commonwealth of Massachusetts.

{08126/609122-000/01261605.2}

127.    Defendants' acts have caused Plaintiff to suffer loss of money and/or property.

128.    Defendants' acts have caused and will continue to cause damage to Plaintiff.

129.    Defendants' acts greatly and irreparably damage and will continue to so damage Plaintiff unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law and thus are entitled to injunctive relief.

## COUNT V
### Trademark Infringement Under Massachusetts Common Law
### (Against All Defendants)

130.    Plaintiff repeats and re-alleges paragraphs 1-101, as if fully alleged herein.

131.    Defendants have used Plaintiff's Arduino Marks in commerce without consent.

132.    Plaintiff's Arduino Marks are distinctive in the minds of the consuming public, and serve to indicate the source of origin of the products and/or as identifying the goods or services sold thereunder.

133.    Defendants' acts are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association between one or more of the Defendants and Plaintiff Arduino, LLC, or as to the origin, sponsorship or approval of one or more of Defendants' goods, services or commercial activities.

134.    Defendants have infringed Plaintiff's senior trademark rights in the Arduino Marks with the intent to deceive the public into mistakenly believing that Defendants' products were manufactured by, approved by, sponsored by, or affiliated with Plaintiff.

135.    By reason of Defendants' acts alleged herein, Plaintiff's reputation has been harmed.  Consequently, Plaintiff has suffered and will continue to suffer damage and injury to its business, reputation and goodwill, for which Plaintiff has no adequate remedy at law. Such conduct on the part of Defendants has caused and will continue to cause irreparable harm to

{08126/609122-000/01261605.2}

Plaintiff, and thus Plaintiff is entitled to injunctive relief.

## COUNT VI
### Copyright Infringement Under the Copyright Act
### (Against All Defendants)

136.    Plaintiff repeats and re-alleges paragraphs 1-101, as if fully alleged herein.

137.    Plaintiff is the owner of valid copyrights in the Infinity Designs, which works are protected under the Berne Convention.

138.    Plaintiff's Infinity Designs are works that were created in Italy.

139.    Plaintiff's Infinity Designs were first published in Italy.

140.    Upon information and belief, Defendants, having full knowledge of the rights of Plaintiff alleged herein, has infringed the copyrights of Plaintiff by selling, manufacturing, publishing, displaying, vending, distributing, promoting and/or advertising products containing material identical or substantially similar to the Infinity Designs without the permission or consent of Plaintiff.

141.    All acts of Defendants, as set forth herein, are without the permission, license or consent of Plaintiff, and are irreparably damaging Plaintiff.  Plaintiff has no adequate remedy at law.  In addition, Plaintiff has been damaged by the acts of Defendants in a monetary amount as yet unknown, but to be determined according to proof.

## COUNT VII
### Breach of Contract
### (Against Gianluca Martino)

142.    Plaintiff repeats and re-alleges paragraphs 1-101, as if fully alleged herein.

143.    Defendant Martino entered into an agreement with the Founders that any trademark applications filed would be on the Partners' behalf.  The Partners assigned their interest in this agreement to Arduino, LLC.

144.    Defendant Martino caused the Foreign Trademark Applications to be filed in the name of Smart Projects.

145.    Defendant Martino did not assign the rights in the Foreign Trademark Applications to the Founders or Arduino, and thus Defendant Martino is in material breach of his contract with the Founders and Arduino.

146.    As a direct and proximate result of Defendant Martino's breach, the Founders and Arduino have suffered irreparable harm and damages.

147.    Plaintiff is entitled to damages to compensate Plaintiff for Defendants Martino's breach.

148.    Defendant's acts greatly and irreparably damage and will continue to so damage Plaintiff unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law and thus are entitled to injunctive relief and other equitable relief, including but not limited to Defendant Martino's assignment of  all rights and interests in the Foreign Trademark Applications to Arduino.

## COUNT VIII
### Breach of Contract
### (Against Gianluca Martino and Smart Projects)

149.    Plaintiff repeats and re-alleges paragraphs 1-101, as if fully alleged herein.

150.    Defendants Martino and Smart Projects entered into a license agreement, through a series of communications, with Banzi, the Founders and Arduino for the manufacture and distribution of Arduino-branded products.

151.    As part of Defendants Martino and Smart Projects' agreements with Banzi, the Founders and Arduino, Defendants Martino and Smart Projects were to pay royalties on the sales of the ARDUINO-branded products.

152.    Defendants Martino and Smart Projects have ceased paying royalties to Banzi, the Founders and Arduino on their sales of the ARDUINO-branded products, in violation of the parties' agreements.  Thus, Defendants Martino and Smart Projects are in material breach of their agreements with Banzi, the Founders and Arduino.

153.    As a direct and proximate result of Defendants Martino and Smart Projects' breach, Banzi, the Founders and Arduino have suffered irreparable harm and damages.

154.    Plaintiff is entitled to damages in the form of past royalties and damages to compensate Plaintiff for Defendants Martino and Smart Projects' breach.

155.    Defendants' acts greatly and irreparably damage and will continue to so damage Plaintiff unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law and thus are entitled to injunctive relief.

**COUNT IX**
**Breach of Fiduciary Duty**
**Foreign Trademark Applications**
**(Against Gianluca Martino)**

156.    Plaintiff repeats and re-alleges paragraphs 1-101, as if fully alleged herein.

157.    A fiduciary relationship and duty existed at the time of the Foreign Trademark Application filings between Martino and Arduino, and continues to exist today.

158.    Martino breached his fiduciary duty to Arduino by filing the Foreign Trademark Applications in the name of Smart Projects.

159.    Despite Martino's fiduciary duty, Martino took, for his personal benefit, an opportunity or advantage relating to the Arduino Marks that belonged to Arduino.

160.    By failing to notify Arduino of the Foreign Trademark Application filings, and that such filings were in the name of Smart Projects, Martino violated the corporate opportunity doctrine.

25

161.    Martino breached his fiduciary duty to Arduino by stealing an asset of Arduino.

162.    Martino's breach has caused harm to Arduino, and Arduino is entitled to damages.

163.    Any gains or advantages that Martino has or will acquire from such breach should inure to the benefit of Arduino.

164.    Plaintiff is entitled to an Order directing Martino to assign any rights he has personally, or through any of his business ventures, including but not limited to Gheo and Smart Projects, to the Foreign Trademark Registrations and Applications to Arduino.

165.    Martino's acts greatly and irreparably damage and will continue to so damage Plaintiff unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law and thus are entitled to injunctive relief prohibiting Martino from filing or prosecuting any trademark applications, or asserting any registered trademarks, in an individual capacity or through any of his business ventures, relating to Arduino without Arduino's permission.

### COUNT X
### Breach of Fiduciary Duty
### TTAB Cancellation Proceedings
### (Against Gianluca Martino)

166.    Plaintiff repeats and re-alleges paragraphs 1-101, as if fully alleged herein.

167.    A fiduciary relationship and duty existed between Martino and Arduino at the time of Smart Project's Petition to Cancel Arduino's U.S. Trademark Registration Nos. 3,931,675 and 4,113,794, and continues to exist today.

168.    Martino breached his fiduciary duty to Arduino by directing the filing of the Petition to Cancel by Smart Projects.

169.    Despite Martino's fiduciary duty, Martino is attempting to steal an asset of Arduino.

26

170.    Martino's breach has caused harm to Arduino.

171.    Any gains or advantages that Martino has or will acquire from such breach should inure to the benefit of Arduino.

172.    Plaintiff is entitled to an Order directing Martino to withdraw the Smart Projects Petition to Cancel.

173.    Martino's acts greatly and irreparably damage and will continue to so damage Plaintiff unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law and thus are entitled to injunctive relief prohibiting Martino from filing any Petitions to Cancel or Oppositions relating to the Arduino Marks.

## **PRAYER FOR RELIEF**

**WHEREFORE**, based on the foregoing, Plaintiff prays for judgment against Defendants as follows:

A. A Declaration that Plaintiff is the true and lawful owner of the Arduino Marks, including the Registered Marks.

B. An Order permanently enjoining and restraining Defendants, their subsidiaries, divisions, branches, affiliates, predecessors or successors in business, parents and wholly owned or partially owned entities of the party, and any entities acting or purporting to act for or on behalf of the foregoing, including any agents, employees, representatives, officers, directors, servants, partners, and those persons in active concert or participation with them, from engaging in, offering, or providing goods or services in connection with any mark that is identical to, or confusingly similar with, one or more of the Arduino Marks;

{08126/609122-000/01261605.2}

C.  An Order requiring assignment of all Foreign Trademark Applications held by any Defendant to Arduino LLC.

D.  An Order, pursuant to 15 U.S.C. § 1117(a):

    a.   requiring an accounting of Defendants' profits from Defendants' unlawful use of the Arduino Marks and awarding all of said profits to Plaintiff;

    b.  awarding any damages sustained by Plaintiff due to Defendants' acts complained of herein;

    c.  awarding costs of the action; and

    d.  awarding treble damages.

E.  A Declaration that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a) and awarding Plaintiff its reasonable attorneys' fees and costs based thereon.

F.  An Order permanently enjoining and restraining Defendants, their subsidiaries, divisions, branches, affiliates, predecessors or successors in business, parents and wholly owned or partially owned entities of the party, and any entities acting or purporting to act for or on behalf of the foregoing, including any agents, employees, representatives, officers, directors, servants, partners, and those persons in active concert or participation with them from selling, manufacturing, publishing, displaying, vending, distributing, promoting and/or advertising any materials, packaging, and product which infringe Plaintiff's copyrights pursuant to 17 U.S.C. § 502.

G.  An Order requiring Defendants to return any and all materials, packaging, and product containing the Infinity Designs to Plaintiff pursuant to 17 U.S.C. § 503.

H.  An Order awarding Plaintiff such damages as it sustained in consequence of its

infringe, and to account for all gains, profits and advantages derived by Defendants from such copyright infringement pursuant to 17 U.S.C. § 504.

I.   That Defendants pay to Plaintiff its costs of this action, and Plaintiff's reasonable attorneys' fees as the court may allow.

J.   An Order awarding Plaintiff pre-judgment interest.

K.   An Order awarding exemplary and/or punitive damages.

L.   An Order awarding actual, consequential, incidental and special damages, plus pre and post-judgment interest thereon, as well as punitive damages and the costs of this action, in an amount to be determined at trial, as a result of Defendants' (i) breach of contract and (ii) breach of fiduciary duty.

M.   An Order awarding Plaintiff any further relief this Court shall deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all claims so triable.

Dated: January 23, 2015                    Respectfully submitted,


     /s/ John L. Welch
John L. Welch BBO#522040
LANDO & ANASTASI, LLP
One Main Street, 11th Floor
Cambridge, Massachusetts 02142
Telephone: (617) 395-7000
Email: jwelch@lalaw.com


Martin B. Schwimmer (*pro hac vice* to be filed)
Victoria Polidoro (*pro hac vice* to be filed)
Lori L. Cooper (*pro hac vice* to be filed)
LEASON ELLIS LLP
One Barker Avenue, Fifth Floor
White Plains, New York 10601
Telephone: (914) 288-0022
Email: Schwimmer@LeasonEllis.com
Email: Polidoro@LeasonEllis.com
Email: Cooper@LeasonEllis.com


*Attorneys for Plaintiff*